■ TUG HILL CONSTRUCTION, INC., Appellant, v COUNTY OF BROOME et al., Respondents. [704 NYS2d 391] —Cardona, P. J. Appeal from an order of the Supreme Court (Rose, J.), entered June 3, 1999 in Broome County, which granted defendants' motion for summary judgment dismissing the complaint.

In connection with the closure of the Colesville Landfill located in the Town of Colesville, Broome County, defendants solicited bids from contractors to cap the landfill by covering it with specified soils and protective barriers. The capping, which included construction of a wetland mitigation area to further filter water runoff, was to be performed in accordance with requirements set forth in a "Final Engineering Design Report," as well as other documents, which were provided to prospective bidders. Plaintiff submitted the lowest bid and was awarded the contract on or about March 7, 1995.

Thereafter, plaintiff proposed a landfill grading plan that was reviewed by C & S Engineers, Inc., a consultant retained by defendants, providing, *inter alia*, for cutting a portion of the existing landfill and using such waste material to fill other areas to satisfy the grade requirements. Since plaintiff would not have to borrow fill under its plan from other areas of the site to create the cap, plaintiff proposed to eliminate the wetland mitigation area which was to be located in the on-site borrow area set out in the construction plan. Upon approval of the plan, plaintiff intended to commence grading on April 24, 1995. On May 8, 1995, C & S notified plaintiff of its dissatisfaction with certain aspects of the grading plan, particularly that part providing for cutting into the existing landfill mass and cover soils, and requested that plaintiff make adjustments to the plan to more closely conform with the design intent.

In response, plaintiff maintained that the grading plan complied with the requirements of the contract documents and requested C & S to approve the plan so that it could commence grading. In the ensuing weeks, the parties attempted to resolve their differences without success. On May 30, 1995, C & S outlined the modifications to the grading plan which would be acceptable. C & S advised plaintiff, however, that the contract specification restricting the use of material excavated from the existing soil cover for subgrade fill would be strictly enforced inasmuch as the use of such material would reduce material taken from the approved borrow area and result in additional costs for borrow area excavation to construct the wetland mitigation area. By letter dated June 1, 1995, plaintiff responded

that strict construction of this contract requirement "will force us to abandon our subgrade plan * * * and import material from the on-site borrow area in lieu of cutting and filling, thereby forcing us to bear the financial burden of creating the wetland mitigation area." In closing, plaintiff indicated that it would await a further direction prior to undertaking additional work.

Further discussions were conducted at a June 7, 1995 progress meeting and, on June 8, 1995, plaintiff sent a letter to defendant County of Broome advising that plaintiff "was to prepare and send * * * a proposal outlining the methods and costs of implementing a grading plan which would resolve the majority of the outstanding issues." On July 6, 1995, the parties held another meeting during which defendants apparently directed plaintiff to perform under a grading plan that required plaintiff to excavate the entire borrow area and use such material to grade the landfill.

On July 21, 1995, plaintiff served upon defendants a notice of claim advising, *inter alia*, "that it considers the rejection of its site grading plans and the requirement that it modify said plans to constitute revised work entitling [it] to an equitable adjustment under the contract." Plaintiff sent a follow-up letter dated August 7, 1995 containing a breakdown of cost and time impacts related to the grading issues. When defendants failed to reimburse plaintiff for additional costs incurred in connection with the grading issues, it commenced this action for breach of contract. Following joinder of issue, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion upon finding that plaintiff failed to file a timely and sufficient notice of claim pursuant to the contract. This appeal by plaintiff ensued.

We affirm. Initially, we note that compliance with the notice of claim provisions of a municipal contract constitutes a condition precedent to the commencement of an action for breach of contract which may only be avoided if the municipality acted in a manner that precluded the other party from complying (*see, A.H.A. Gen. Constr. v New York City Hous. Auth.*, 92 NY2d 20, 31). Here, the parties' contract provided, with respect to claims for revised work, that the contractor shall "[f]ile with the County, within thirty (30) working days after being ordered to perform the work claimed by him to be revised work or within thirty (30) working days after commencing performance of the revised work, whichever date shall be earlier * * * a written notice of the basis of his claim and request a determination thereof." The contract further required the contractor to

file, within the same time period, "a verified, detailed statement, with documentary evidence, of the items and basis of his claim." Notably, the contract specifically precluded the commencement of an action or proceeding under the contract unless "[t]he [c]ontractor or the person claiming under or through him shall have *strictly complied* with all requirements relating to the giving of notices and information with respect to such claim" (emphasis supplied).

Turning first to the timeliness of the notice of claim, the parties dispute when plaintiff was directed to perform what it claims is revised work. Defendants argue, and Supreme Court concluded, that it was on June 1, 1995 when plaintiff acknowledged that addressing the objections raised by C & S would require it to forgo its original grading plan with respect to the cutting of the existing soil cover and use of such waste material for grading purposes. The record, however, reveals that further negotiations were held among the parties after that date with respect to the grading issues and that plaintiff had ceased work during that time period. Although there were apparently no minutes kept of the meeting on July 6, 1995, plaintiff maintains that it was directed at that meeting to excavate the borrow area and use such material to grade the landfill in direct contravention to its original plan. In view of the conflicting evidence concerning when plaintiff was directed to perform what it characterizes as revised work, we cannot say as a matter of law that the notice of claim was untimely.

Nevertheless, it is clear from the record that plaintiff neglected to comply with the requirement that it file "a verified, detailed statement, with documentary evidence, of the items and basis of [the] claim." Plaintiff's notice of claim, as evidenced by its July 21, 1995 and August 7, 1995 letters, was not properly verified in any manner nor sufficiently supported by documentary evidence detailing the basis for each of the items for which it sought reimbursement. In light of these omissions, and given the strict construction to be afforded the provisions of this contract, we agree with Supreme Court that the notice of claim was patently insufficient. Therefore, summary judgment dismissing the complaint was properly granted. Plaintiff's remaining contentions either lack merit or, in view of our disposition, need not be considered.

Mercure, Crew III, Peters and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.